**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. CR2-06-129** |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | **Magistrate Judge Terence P. Kemp** |
| **LANCE K. POULSEN, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

This matter is before the Court on the parties' combined eleven motions in limine.[1]  The

Court will first dispose of Defendants' motions, and then turn to the Government's motions.

**II.  ANALYSIS**

**A.  Defendants' Motions in Limine**

1.  Defendants' Motion to Exclude Evidence About Poulsen's Indictment on Obstruction
Charges

Defendants move to preclude the Government from introducing any evidence at trial

regarding the facts alleged in *United States v. Poulsen*, No. 07-209, pertaining to Defendant

Poulsen's separate indictment on charges of witness tampering and obstruction of justice.

---

[1]It should be noted that besides the eleven motions disposed of in this order, the parties
have filed two additional motions.  Defendants' Motion to Compel Disclosure of Confidential
Informants is discussed in the Court's January 29, 2008 order dealing with Defendants'
challenge to the search warrant in this case.  In addition, the parties have stipulated that a ruling
on the Government's Motion to Exclude Defense Expert Witness Wayne Barnes should be
deferred until that motion becomes ripe.

Defendants argue that permitting the Government to present facts regarding Poulsen's alleged obstruction activities will create an unacceptable risk of guilt by association: The jury will take Poulsen's obstruction and witness-tampering activities to mean that Poulsen is guilty of the fraud offenses with which he is charged in this case, and that, by extension, Defendants must be guilty of the fraud offenses as well.

The Court finds that Defendants' motion is **MOOT**.  In its response to Defendants' motion, the Government concedes that introducing evidence about Poulsen's obstruction indictment could be unfairly prejudicial to Defendants.  The Government therefore assures Defendants and the Court that it "will not seek to present evidence, or pose questions, related to Poulsen's witness tampering and obstruction [of justice]."  The Government further represents that even if Defendants "open the door" to the use of this information, the Government will refrain from introducing it until it has first sought and obtained the Court's permission.

2.  <u>Defendants' Motion to Exclude Evidence Concerning Anonymous Letters</u>

Defendants move to prevent the Government from introducing any evidence about three anonymous letters sent to a rating agency and an industry publication in 1999 and 2000.  The letters accused NCFE of perpetrating a fraud on investors and alleged that a significant percentage of NCFE's notes were worthless.

Defendants contend that testimony concerning the letters should be altogether prohibited because any such testimony would: (1) amount to hearsay; (2) violate Defendants' Confrontation Clause rights; and (3) create a risk of unfair prejudice outweighing any probative value.

The Court concludes that Defendants' motion is **MOOT** insofar as the Government has stated that it will not introduce the anonymous letters into evidence, or elicit any witness

2

testimony about their contents.  The Government contends that it should still be permitted to question its witnesses about what NCFE executives told them concerning the anonymous letters. So long as the Government's questions do not violate any evidentiary rule, the Court will not altogether preclude all references to the anonymous letters at this stage.  Rather, the Court will rule on appropriate objections at trial, if and when the subject arises.

### 3. Defendants' Motion to Exclude Victim-Impact Evidence

In prior testimony and interviews with Government agents, witnesses from the investment firms that the Government intends to put on the stand at trial described how the alleged fraud at NCFE personally affected them.  These witnesses testified that their professional reputations were tarnished and in some cases they lost business or their jobs.  Defendants seek to exclude any such testimony at trial on the grounds that it is irrelevant to the issues to be decided by the jury and that it is unduly prejudicial.

The Court finds that Defendants' motion is **MOOT** because the Government represents in its response brief that it does not intend to elicit any testimony about the impact of the alleged fraud on the "individual victim investor witnesses' personal and professional relationships."

### 4. Defendants' Motion to Exclude Witness Opinions About Fraud or Illegality

Defendants move to prevent the Government's witnesses from offering their opinions about the legality of NCFE's conduct.  As an example of the type of statement that should be barred, Defendants point to the prior statements of prospective witness Terrence Glomski of Lincoln Capital, who told the FBI that "the wiring of funds between programs NPF VI and NPF XII is kiting" and "he could not believe NCFE was so business-like about the Ponzi scheme."

The Court holds that Defendants' motion is **MOOT** because the Government states in its

response that it does not intend to elicit any testimony calling for legal conclusions about the ultimate issues in the case.

### 5. Defendants' Motion for a Bill of Particulars

Defendants move for a bill of particulars, identifying seven different subjects raised by the indictment about which they claim to need additional information in order to prepare adequate defenses.

Whether to grant a motion for a bill of particulars lies within the discretion of the district court. *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993). "The function of a bill of particulars is to minimize surprise and assist the defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes." *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (internal quotation marks and citation omitted). "A bill of particulars is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *Id.* (internal quotation marks and citation omitted).

First, the Court finds that four of Defendants' seven requests for more specific information are **MOOT** because the Government has provided the requested information in its response brief. With respect to Defendants' third request, the Government has identified each of the healthcare providers referred to in paragraphs 27-28, 31-33, and 57-58 of the superceding indictment. With respect to Defendants' fifth, sixth, and seventh requests, the Government has identified  emails (and their production numbers) from Defendants Parrett and Happ, and former Defendant Beacham, which form the basis for the "improper adjustments," removed "safeguards," and "fabricated data" allegations in paragraphs 41, 42, and 47 of the superceding

indictment.

As to their first two requests, Defendants move for a bill of particulars identifying where and how "within the NPF XII, Series 2001-4 notes, investors were promised 'their monies would be used for the purchase of Eligible Receivables.'" The Court **DENIES** Defendants' request. The Government is not required to confine its proof regarding Defendants' alleged misrepresentations to specific documents governing NCFE's bond offerings.  The superceding indictment provides Defendants with sufficient information to apprise them of the nature of the fraud they are accused of committing and how they perpetrated that fraud.

In their fourth request, Defendants ask the Government to identify the "false data" Poulsen approved for use in an NPF VI investor report.  The Government opposes this request, claiming that Defendants are not entitled to know how it will prove this allegation.  That may be true, but Defendants simply request that the Government point out which data in the investor report the Government alleges to be the false data approved by Poulsen for use in the report. Because providing the requested information is neither burdensome to the Government, nor prejudicial to its case, and because the requested information will help Defendants more efficiently and effectively defend against the Government's charges of fabricated investor reports, the Court **GRANTS** Defendants' request for a bill of particulars as to request four.  The Government is ordered to furnish the supplemental information no later than **Friday, February 1, 2008**.  In complying with the Court's order, the Government need not explain how the data are allegedly false, or what evidence or witnesses the Government will use to prove their falsity. The Government need only identify which are the allegedly false data that Poulsen authorized for inclusion in the report.

5

6.  <u>Defendants' Motion to Exclude "Other Acts" Evidence Pursuant to Rule 404(b)</u>

In a letter dated December 4, 2007, the Government informed Defendants that at trial it

"may present evidence about NCFE's predecessor programs to those described in the

Superceding Indictment—NPF VI and NPF XII."  The Government explained that it regarded

"[e]vidence of the earlier programs [as] a necessary prelude to the evidence about the

[D]efendants' conduct with respect to the charged programs [i.e., NPF VI and NPF XII], [that is]

directly probative of [Defendants'] offense conduct, and [that] forms an integral part of certain

government witness(es)' testimony."  The Government further described the intended evidence

as covering the development of NCFE's investor programs, the "rollover" between the

predecessor programs and the charged programs, and the origin of the fraud at NCFE.  Finally,

the Government stated that it did not regard this evidence as falling within the purview of

Federal Rule of Criminal Procedure 404(b), but that it provided the Rule 404(b) required notice

nonetheless, out of an abundance of caution.

Defendants ask the Court to bar the Government from putting on the evidence described

in the December 4, 2007 notice.  Defendants contend that this evidence fits squarely within Rule

404(b) and constitutes an improper attempt by the Government to backdoor evidence relating to

allegations of wrongdoing in 1998 and 1999, which were asserted in the original indictment, but

dropped in the superceding indictment.

The Court disagrees that the Government's proposed evidence is Rule 404(b) evidence,

and therefore **DENIES** Defendants' motion.  Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to
> prove the character of a person in order to show action in
> conformity therewith.  It may, however, be admissible for other
> purposes, such as proof of motive, opportunity, intent, preparation,

> plan, knowledge, identity, or absence of mistake or accident,
> provided that upon request by the accused, the prosecution in a
> criminal case shall provide reasonable notice in advance of trial, or
> during trial if the court excuses pretrial notice on good cause
> shown, of the general nature of any such evidence it intends to
> introduce at trial.

Here, the Government's proposed evidence is relevant background information that provides a context for the jury to understand NCFE's business model and how the alleged fraud took root and developed. This is precisely the kind of evidence that the Sixth Circuit has held falls outside the scope of Rule 404(b). In *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000), the Court stated that "evidence [that] is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense" does not run afoul of Rule 404(b). Evidence about NCFE's history and its earlier investment programs is "inextricably intertwined with the charged offense[s]" and thus is admissible as a means of providing the jury with a narrative understanding of the events at NCFE that culminated in the alleged fraud. *Id.*; *see also United States v. Larkins*, No. 06-6052, 2008 U.S. App. LEXIS 1030, *7-8 (6th Cir. Jan. 10, 2008) (affirming admission of evidence about prior scheme to distribute marijuana in a case charging the defendant with a scheme to distribute methamphetamine ); *United States v. Thomas*, 223 F. App'x 447, 454-55 (6th Cir. 2007) (affirming admission of police officer's testimony about having had several prior encounters with the defendant on the grounds that the testimony "was necessary to explain why law enforcement focused their investigation on" the defendant, and therefore the officer's testimony "complet[ed] the story of the charged offense" and did not violate Rule 404(b)).

Moreover, to the extent that the Government's proposed evidence can fairly be

characterized as Rule 404(b) evidence, it is still admissible for the "other purposes" specified in the rule.  For example, evidence about NCFE's prior investment programs is relevant to establishing that Defendants had the motive and opportunity to perpetrate the alleged fraud.  The Government's proposed evidence is also probative of the preparation and planning that Defendants did to lay the groundwork for consummating their scheme.

Finally, the Court rejects Defendants' argument that, assuming Rule 404(b) applies, the Government's notice is deficient.  The bar for providing sufficient notice under Rule 404(b) is not high.  The rule itself provides that the prosecution need only describe the "general nature of" the Rule 404(b) evidence it intends to rely on at trial.  Here, the Government did just that, telling Defendants that its evidence related to "NCFE's predecessor programs" and would include

> what the defendants described as the 'rollover' between the predecessor and charged programs, NCFE's continued funding of the same healthcare providers that had been wrongfully over-funded by NCFE without the purchase of medical receivables as described in the Superceding Indictment, and the defendants' . . . knowledge of NCFE's business model, the similarities and development of NCFE's programs, and the origins of, and opportunity for, the fraud detailed in the Superceding Indictment.

The Court concludes that the Government's notice is sufficient to enable Defendants to prepare for trial.  *See e.g., United States v. Margiljaj*, No. 01-0309, 2002 U.S. Dist. LEXIS 108 (S.D.N.Y. Jan. 7, 2002) (holding that Government's notice complied with Rule 404(b) where the Government merely stated that it "intend[ed] to introduce evidence that the defendant was under significant financial pressure at the time he engaged in the fraudulent activities at issue and that he borrowed, or requested to borrow, substantial sums of money from various individuals . . .").

   7.  Defendants' Motion to Exclude Testimony Regarding Certain Hypothetical Questions

The Government acknowledges that at trial, it intends to ask its investor witnesses

hypothetical questions about whether they would have purchased NCFE's notes if they had

known that Defendants "(a) advanced investor money to healthcare providers without purchasing

eligible receivables, (b) fabricated data in investor reports for NPF VI and XII, (c) double

counted funds in NPF VI and XII by transferring money between the reserve accounts for two

funds for different determination dates, and (d) inserted false information in the Company's

tracking systems."

Defendants ask the Court to bar the Government from asking these kinds of hypothetical

questions on the grounds that they require the witnesses to speculate.

The Government does not cite any Sixth Circuit law (and the Court has not independently

identified any) on the propriety of the questions it seeks to pose, but does cite decisions from the

First and Fourth Circuits, among others, permitting them.  In *United States v. Ranney*, 719 F.2d

1183 (1st Cir. 1983), the district court allowed the prosecutor to ask an investor if he would have

purchased the defendant's contracts if he knew that the defendant's representations were false.

*Id.* at 1187.  The First Circuit rejected the defendant's contention on appeal that the prejudicial

effect of the prosecutor's question outweighed its probative value.  *Id.* at 1188.  The First Circuit

instead held that "[t]he testimony in this instance clearly went to show that investors relied on

[the defendant's] fraudulent sales representations, and that but for those representations no

witness would have purchased an oil contract from the company."  *Id.*

In *United States v. Dukes*, 242 F. App'x 37, 45 (4th Cir. 2007), the prosecutor asked the

witness whether his investment decision would have been different had the defendant told him

that the company he was investing in had no chance of going public.  On appeal, the defendant

argued that the question was unfairly prejudicial.  The Fourth Circuit disagreed, concluding that

the question was not an impermissible guilt-assuming hypothetical, but one that "focused on the materiality of [the defendant's] representations." *Id.*

The Court respects the judgment of these Circuits, but respectfully disagrees with their conclusions. The questions the Government proposes to ask its investor witnesses necessarily assume that Defendants misled investors. For instance, to ask a witness whether she still would have purchased NCFE's notes if she had known that NCFE was falsifying its investor reports is to imply that NCFE was doing that very thing: falsifying its investor reports. Such questions have the potential to confuse the jury (and usurp its role) by making it appear as though the witness is implicitly testifying that Defendants are guilty of the crimes of which they stand accused.

Furthermore, barring the Government from asking its intended hypothetical questions will not prevent it from establishing "the materiality of [NCFE's] representations," *Dukes*, 242 F. App'x at 45, or otherwise impair the Government's ability to make its case. The Government will still be able to ask its witnesses what representations Defendants made to induce the witnesses to invest in NCFE's notes, how they came to believe that those representations were false, and what losses they sustained in connection with Defendants' alleged scheme. Such questions will adequately describe to the jury the pivotal role Defendants' representations played in convincing the investors to purchase NCFE's notes, without risking unfair prejudice to Defendants.

For these reasons, the Court **GRANTS** Defendants' motion to exclude testimony in connection with the Government's intended hypothetical questions.

### 8. Defendant Speer's Motion to Exclude Evidence of CPA License

10

Defendant Speer holds a CPA license.  He moves to prevent the Government from arguing that his background as a CPA is probative of what he knew about the alleged fraud scheme at NCFE.  Speer says that his CPA license is not relevant to any issue in the litigation because: (1) his license has been inactive since 1995, before he started working at NCFE; (2) he has not practiced as an accountant since 1980; and (3) he never prepared or executed financial statements or tax returns for NCFE as a CPA; and (4) he never held himself out as a CPA while working at NCFE.  Even if his CPA license has some marginal relevance, Speer contends that it is outweighed by the risk of unfair prejudice as a result of the facts showing that he did not use his license to fulfill any of his duties at NCFE.  Speer proffers the affidavit of Theodore Johnson, himself a licensed CPA, in support of his motion.  Johnson testifies that Speer's CPA license "was not relevant to: (a) his job description with NCFE; (b) the performance of his job duties at NCFE; [or] (c) [his] interaction with auditors and other financial professionals."

The Court does not find Speer's argument convincing.  As a threshold matter, it is factually untrue that Speer did not "h[o]ld himself out as a CPA" while employed at NCFE.  The Government has proffered Speer's NCFE profile, an NCFE press release announcing his promotion from Vice President to Executive Vice President, and a supplement to an NPF Private Placement Memorandum, all of which note that Speer is a certified public accountant.  Thus, while working for NCFE, both Speer and NCFE believed that his CPA credential was relevant to the work he performed and sufficiently important to tout to prospective clients, business partners, and investors.

Second, even though Speer may not have been an actively licensed CPA during his tenure at NCFE, his CPA license was unquestionably relevant to his job duties.  A job

11

description for Speer's position as Vice President of Finance lists the following duties, among

others:

- Oversees and directs treasury, budgeting, audit, tax, accounting, purchasing, real estate, long range forecasting, and insurance activities for the organization;
- Directs the controller in providing and directing procedures and computer applications systems necessary to maintain proper records and to afford adequate accounting controls and services;
- Appraises the organization's financial position and issues periodic reports on organization's financial stability, liquidity, and growth;
- Directs and coordinates the establishment of budget programs;
- Coordinates tax reporting programs;
- Analyzes, consolidates, and directs all cost accounting procedures together with other statistical and routine reports;
- Oversees and directs the preparation and issuance of the corporation's annual report.

As the Government argues, it is hard to imagine how Speer's education and skill as a

CPA are irrelevant to his performance of these job responsibilities.

Finally, the Court has no trouble finding that where Speer's knowledge and intent—his

*mens rea*—is an element of the fraud offenses with which he is charged, the knowledge and

skills he acquired as a result of his CPA training are relevant to what he knew about NCFE's

business practices and whether those business practices were fraudulent. There is no basis for

concluding that when presented to the jury, Speer's background as a licensed CPA will be more

prejudicial than probative. Speer is free to present evidence to the jury establishing that his

license was inactive during his employment with NCFE and that he had not practiced as a CPA

for many years at the time the alleged fraud took place.

Accordingly, Speer's motion is **DENIED**.

12

9. Defendant Dierker's Motion to Prevent the Government's Witnesses from Offering Opinions at Trial if Those Opinions are Based on Records Obtained from NCFE's Funding Department

Defendant Dierker moves the Court for an order preventing Government witnesses from offering opinion testimony at trial if those opinions are based on information contained in NCFE Funding Department records.

Dierker contends that all records from NCFE's Funding Department are derived from information and data on NCFE's AS400 computer system. Dierker further argues that the data on the AS400 system has been corrupted. In support of this contention, Dierker proffers the expert report of Jon Bryant, a computer consultant who worked with NCFE's AS400 system. Bryant opines that "the integrity of the NCFE AS400 system has been compromised." Accordingly, Dierker argues that the Government's witnesses should be precluded from offering any opinions at trial to the extent those opinions are predicated on the allegedly compromised Funding Department records.

Dierker's motion is unavailing for two reasons. First, his spoliation claim fails because he has not offered any evidence establishing that the Government willfully destroyed data on the AS400 system. "Spoliation is defined as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003). A necessary element of the claim is a showing that a party intentionally destroyed the evidence in question. *United States ex rel. Judd v. Maloy*, No. 03-241, 2006 U.S. Dist. LEXIS 63465, *32-33 (S.D. Ohio Sept. 6, 2006). Dierker does not offer any such evidence here.

Second, there is no basis for excluding the Funding Department records or opinion testimony about them because allegations that the AS400 has been tampered with go to the

13

weight of the evidence, not its admissibility.  *See United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997) ("Merely raising the possibility of tampering is insufficient to render evidence inadmissible."); *United States v. Bonallo*, 858 F.2d 1427, 1435-36 (9th Cir. 1988) (holding that the "mere possibility that [computer] logs may have been altered goes only to the weight of the evidence, not its admissibility"); *Burton v. United States*, Nos. 03-124, 97-154, 2007 U.S. Dist. LEXIS 38570 (E.D. Tenn. May 23, 2007) (holding that the possible alteration of a surveillance videotape went to its weight, not its admissibility).

For these reasons, the Court **DENIES** Dierker's motion.

### B.  The Government's Motions in Limine

1.  <u>The Government's Motion Concerning Evidence Presented by Defendants in Connection with the Severed Defendants</u>

The Government seeks an order limiting Defendants' ability to introduce evidence in connection with the severed Defendants, Poulsen and Happ.  The Court **DENIES** the Government's motion.

First, the Government asks the Court to prevent Defendants from making statements or presenting evidence suggesting that "Defendants Poulsen and Happ . . . were not charged, should be at trial, or that there is some other favorable inference to be drawn from their absence."  The Government's concern will be put to rest through the Court's preliminary instructions and charging instructions to the jury.  The Court will explain that Poulsen and Happ have been charged in the same indictment as Defendants and, for reasons that are not relevant to these proceedings, they will be tried separately.  Further, the Court will instruct the jurors that they are not to draw any inferences, positive or negative, from Poulsen's and Happ's absence in the courtroom.

Next, the Court declines to require Defendants to notify the Court and the Government prior to introducing any statements made by Poulsen and/or Happ.  The Government argues that such statements, if elicited by Defendants, will almost certainly constitute hearsay.  However, the Government fails to provide any compelling justification for requiring Defendants to pre-disclose their intent to introduce these statements.  The Court concludes that there is no reason to depart from the ordinary practice whereby parties interpose contemporaneous objections to allegedly improper examination questions or evidence.

Finally, the Government asks that Defendants be prohibited from encouraging the jury to give less weight to evidence supporting the existence of the alleged conspiracy insofar as that evidence applies to overt acts committed by Poulsen and Happ.  The Court's charging instructions to the jurors will caution them that they may not discount any evidence of Poulsen's or Happ's overt acts in furtherance of the alleged conspiracy just because the charges against Poulsen and Happ are not being adjudicated in this proceeding.

2.  <u>The Government's Motion for Adequate Disclosure and to Preclude or Limit Expert Testimony of Robert J. DeLuca and Gregory H. Gac</u>

The Government raises several objections to Defendants' proposed expert witnesses, Robert J. DeLuca and Gregory H. Gac.  For the reasons described below, the Court **GRANTS IN PART** and **DENIES IN PART** the Government's motion.

*(a) Robert J. DeLuca*

The Government first argues that Defendants have not complied with their expert-witness disclosure obligations under Federal Rule of Criminal Procedure 16 because DeLuca has not adequately identified the documents he relied upon in forming his opinions.  The Court agrees.  DeLuca generally says that in preparing his report, he "obtained and reviewed various

15

documents relevant to this matter."  On only two pages of his forty-page report does DeLuca specify the documents he relied upon in arriving at his opinions.  Therefore, consistent with its prior order instructing the Government to supplement its Rule 16 disclosures, the Court orders Defendants to "produce written summaries that set forth each and every document, including any portions of documents, that [DeLuca] relied upon in forming the opinions that [he] will give at trial. [Defendants] shall specify the Bates ranges for each document, the title of the document and, if the witness does not rely on the entire document, the relevant portion(s)."  *See* Dec. 12, 2007 Order at 3.

Second, the Government complains that Defendants have not adequately set forth DeLuca's opinions as to the testimony he will offer concerning NCFE's "procedures and processes" for reviewing healthcare providers' accounts receivable.  A review of DeLuca's report shows that he merely reserves the right to opine on this subject at some future date. Defendants do not provide any reason why DeLuca cannot provide his opinion now, as well as the bases and reasons underlying that opinion.  If Defendants intend to elicit testimony from DeLuca about NCFE's "procedures and processes," they must appropriately supplement their disclosures in advance of trial.

The Government next argues that DeLuca fails to offer any basis for his opinion regarding the relevance of certain representations and warranties that a receivable must satisfy to be considered an "eligible receivable."  The Government challenges DeLuca's opinion that, "From a healthcare perspective, certain of these representations and warrant[ie]s are more relevant than others."  Although DeLuca goes on to identify the "more relevant healthcare related representations and warrant[ie]s," the Court agrees with the Government that he has

failed to provide any basis for his opinion that certain of the representations "from a healthcare perspective," are more relevant than others. Defendants are ordered to supplement DeLuca's report by explaining on what "healthcare"-related basis he concludes that certain of the representations and warranties are more relevant than others.

Fourth, the Government contends that DeLuca fails to provide a basis for his opinion that "it is in fact normal to recognize an estimated amount for accounts receivable before a bill has been generated or submitted to a payor." The Court finds that DeLuca has adequately supported this opinion. Using the examples of a patient still in the hospital and one who has been discharged, DeLuca described at some length the conditions that would give rise to a healthcare organization booking an account receivable before it has generated a bill. Accordingly, Defendants are not required to supplement DeLuca's report on this subject.

Fifth, the Court finds that DeLuca's proposed testimony is relevant to the facts of this case. The standard for relevance is broad. *See* Fed. R. Evid. 401. Here, DeLuca's proposed testimony about how healthcare providers are reimbursed for their services; when and how accounts receivable are established in connection with patient treatment versus when bills for service are submitted; accounting practices within the healthcare field; and what considerations impact how healthcare accounts receivable are valued, all bear on the issues that inhere in this case, and all are relevant to the ultimate question before the jury, namely, whether NCFE committed fraud in the sale and management of its bonds.

Finally, the Court rejects the Government's argument that DeLuca's testimony should be excluded insofar as his opinions are based on a plain reading of contractual terms in documents such as the Master Indentures and Sales and Subservicing Agreements. The Government argues

17

that the jury is perfectly capable of reading these documents and coming to their own conclusions about what they mean and therefore DeLuca's testimony is irrelevant and unnecessary. The Court disagrees. A review of the challenged opinions shows that DeLuca has applied his independent knowledge and skills to explain what the technical terms in the investment documents mean. Since documents such as Master Indentures and Sales and Subservicing Agreements do not fall within the experience of the average layperson, expert testimony to opine on their meaning is permissible. *See United States v. White*, 492 F.3d 380, 399-400 (6th Cir. 2007) (holding that witnesses' testimony about Medicare concepts and terms were beyond the knowledge of the average layperson and therefore constituted expert testimony within the scope of Federal Rule of Evidence 702).

Defendants are ordered to make the supplemental disclosures called for by this order no later than **Friday, February 1, 2008**.

### *(b) Gregory H. Gac*

The Government argues that Defendants' Rule 16 disclosures as to Gac are inadequate because they have not provided a current resumé for him and have failed to identify each of the places he has worked along with his attendant job responsibilities. The Court finds that the Government's motion is **MOOT** on this point because Defendants have provided the requested information with their response.

The Court **DENIES** the Government's motion insofar as the Government claims that Gac's proposed testimony is not relevant to this case. Defendants intend to offer Gac as an expert on asset-backed securities. It is beyond dispute that the allegations of fraud in this case center around NCFE's securitization of healthcare accounts receivable. Therefore, Gac's

expertise about this industry is relevant to a determination of the facts in issue.

Finally, as with DeLuca, the Court rejects the Government's argument that Gac's testimony should be precluded because it is premised on no more than a reading and regurgitation of the technical terms in NCFE's investment portfolio documents. A review of Gac's report shows that he has applied his own experience and skill in the asset-backed securities industry to offer his opinion about what the terms mean.

### III. CONCLUSION

For the foregoing reasons, the Court finds that (1) Defendants' Motion to Exclude Evidence About Poulsen's Indictment on Obstruction Charges (docket no. 473) is **MOOT**; (2) Defendants' Motion to Exclude Evidence Concerning Anonymous Letters (docket no. 466) is **MOOT**; (3) Defendants' Motion to Exclude Victim-Impact Evidence (docket no. 467) is **MOOT**; (4) Defendants' Motion to Exclude Witness Opinions About Fraud or Illegality (docket no. 469) is **MOOT**; (5) Defendants' Motion for a Bill of Particulars (docket no. 465) is **GRANTED IN PART AND DENIED IN PART**; (6) Defendants' Motion to Exclude "Other Acts" Evidence Pursuant to Rule 404(b) (docket no. 472) is **DENIED**; (7) Defendants' Motion to Exclude Testimony Regarding Certain Hypothetical Questions (docket no. 470) is **GRANTED**; (8) Defendant Speer's Motion to Exclude Evidence of CPA License (docket no. 468) is **DENIED**; (9) Defendant Dierker's Motion to Prevent the Government's Witnesses from Offering Opinions if Those Opinions are Based on NCFE Funding Department Records (docket no. 448) is **DENIED**; (10) the Government's Motion Concerning Evidence Presented by Defendants in Connection with the Severed Defendants (docket no. 458) is **DENIED**; and (11) the Government's Motion for Adequate Disclosure and to Preclude or Limit Expert Testimony of

Robert J. DeLuca and Gregory H. Gac (docket no. 480) is **GRANTED IN PART AND**

**DENIED IN PART**.

      **IT IS SO ORDERED.**


               **s/Algenon L. Marbley**
            **ALGENON L. MARBLEY**
            **United States District Court Judge**


**DATE: January 30, 2007**